UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 06-11682-RWZ

FAMILY WINEMAKERS OF CALIFORNIA,
STEPHEN J. POOR, III,
and GERALD C. LEADER

v.

EDDIE J. JENKINS in his official capacity as Chairman of the Massachusetts Alcoholic Beverages Control Commission, SUZANNE IANNELLA in her official capacity as Associate Commissioner of the Massachusetts Alcoholic Beverages Control Commission and ROBERT H. CRONIN in his official capacity as Associate Commissioner of the Massachusetts Alcoholic Beverages Control Commission

MEMORANDUM and ORDER

June 8, 2011

ZOBEL, D.J.

Plaintiffs Family Winemakers of California, Stephen J. Poor, III, and Gerald C. Leader prevailed on their 42 U.S.C. § 1983 claim against the defendants, individuals named in their official capacity with the Massachusetts Alcoholic Beverages Control Commission (referred to as the "Commission"). Now pending is their amended 42 U.S.C. § 1988 motion for $1.62 million in attorney fees and expenses which, they concede, "may appear to be high at first blush." (Pls.' Mem. in Supp. 1, Docket # 143.) The Commission argues that plaintiffs should be awarded no more than $362,446 in fees and expenses.

I.  **Background**

In 2005 the Supreme Court held in Granholm v. Heald that states which permit

in-state wineries to sell wine directly to consumers but prohibit out-of-state wineries from doing so discriminate against interstate commerce in violation of the Commere Clause. 544 U.S. 460, 466 (2005). At the time <u>Granholm</u> was decided, a lawsuit was pending in this district which challenged a Commonwealth of Massachusetts law that allowed in-state, but not out-of-state, wineries to sell directly to consumers. Following <u>Granholm</u>, the district court declared the law unconstitutional and enjoined the Commonwealth from enforcing it. <u>Stonington Vineyards, Inc. v. Eddie Jenkins</u>, No. 05-10982 (D. Mass. Oct. 5, 2005) (Tauro, J.).

The Commonwealth responded to <u>Granhom</u> and <u>Stonington Vineyards</u> by enacting a new law, codified at Mass. Gen. Laws ch. 138, § 19F. This law created a two-tier licensing scheme for wineries based upon total annual production. Wineries producing less than 30,000 gallons could sell to both wholesalers and consumers, while wineries producing more than 30,000 gallons could sell only to wholesalers <u>or</u> consumers. All wineries in Massachusetts produced less than 30,000 gallons. Approximately 12% of wineries nationwide produced more than 30,000 gallons, but these wineries accounted for 98% of the total volume of domestic wine production.

Plaintiffs brought the instant lawsuit challenging this new law as unconstitutional, barred by the Commerce Clause. To prosecute their claim they retained counsel at two law firms: a multi-state team headed by Tracy Genesen of the San Francisco office of Kirkland & Ellis LLP, one of the nation's largest law firms; and local counsel Gerald Caruso, of the Boston law firm Rubin & Rudman LLP. Plaintiffs applied the established legal standards for a dormant Commerce Clause challenge and argued that the law

2

had an economically discriminatory purpose and effect, demonstrated by the legislative process that culminated in the 30,000 gallon tiered system which restricted sales of only out-of-state wineries, and that, regardless, the burden on interstate commerce was clearly excessive in relation to any local benefits. This argument differed from and was more complex than that which prevailed in Stonington Vineyards, as the earlier law was facially discriminatory.

Procedural skirmishing began with plaintiffs' motion to transfer the case to Judge Tauro on the ground that it was related to Stonington Vineyards. The motion was denied. The Commission then moved unsuccessfully to dismiss for lack of standing. The parties next engaged in a moderate amount of discovery. Plaintiffs took four depositions, defended one, produced 602 pages of documents, and answered a 19 question set of interrogatories. (Defs' Opp'n Brief 16 n.11, Docket # 149.) They pursued informal discovery with Commonwealth legislators and their staffs, regarding the alleged discriminatory intent, and with wineries, to establish the impact of the 30,000 gallon limit. This discovery was essential to demonstrate the discriminatory purpose and effect and, ultimately, the material facts were largely undisputed.

Plaintiffs moved for, and prevailed on, summary judgment. I found discriminatory purpose and effect and that the burden of the law on interstate commerce was clearly excessive (Docket # 110), and I enjoined the defendants from enforcing any portion of the law which limited eligibility for licenses to wineries of a certain size (Docket # 113). The judgment was affirmed on appeal. Family Winemakers of Cal. v. Jenkins, 592 F.3d 1 (1st Cir. 2010).

The First Circuit remanded the litigation for a determination of attorney fees, and plaintiffs filed their first 42 U.S.C. § 1988 motion shortly thereafter. Legal fees billed to plaintiffs totaled $2,102,905 for more than 5,300 hours of work. This initial motion reflected various adjustments, including the removal of 200 hours of billed time, and sought $1,940,238 in fees and $122,105 in expenses. (Docket # 123.) After a status conference, the parties agreed to engage in settlement discussions regarding the fee application. The discussions were unsuccessful. Plaintiffs then filed this amended motion, with a reduction in hours and excluding certain expenses, requesting $1,524,017 in attorney fees and $96,339 in expenses. The Commission has, throughout, maintained that $362,446 constitutes the maximum reasonable fee based on various calculations set forth in the briefing.

**II.   A Reasonable Attorney Fee**

A prevailing party in an action brought under 42 U.S.C. § 1983 is entitled to an award of a reasonable attorney fee. 42 U.S.C. § 1988(b). "[T]he attorneys' reasonable and necessary costs and expenses" may also be recovered. Palmigiano v. Garrahy, 707 F.2d 636, 637 (1st Cir. 1983). There is no dispute that plaintiffs prevailed.

This court's determination of a reasonable fee begins with a lodestar analysis. De Jesus Nazario v. Morris Rodriguez, 554 F.3d 196, 207 (1st Cir. 2009). "The lodestar is determined by multiplying the number of hours productively spent by a reasonable hourly rate." Id. Plaintiff submitted records documenting 5,373.68 hours of work by 43 timekeepers and initially sought to recover for 5,171.58 hours of that time contributed by 22 individuals. The amended fee motion seeks compensation for

4

4,058.5 hours of work by nine individuals. Hourly rates vary wildly, ranging from $125 for a project assistant to $985 for one Kirkland & Ellis attorney. It is plaintiffs' burden to prove the requested fee is reasonable. See Torres-Rivera v. O'Neill Cancel, 524 F.3d 331, 340 (1st Cir. 2008).

### A. Hours

When applying the lodestar approach, a court deducts "duplicative, unproductive, or excessive hours." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001). That task has proved all but impossible in respect to the individual billing entries constituting the majority of hours. The Kirkland & Ellis billing records cover 277 pages. Attorney Caruso's billing records run another 89 pages. A single page may included ten or more timekeeping entries. Many entries exhibit "block billing," where multiple tasks are listed under a single time entry. Plaintiffs' "summary" is a 52-page collection of densely populated spreadsheets.

The Commission has combed through the billing records to prepare exhibits identifying specific entries which, it asserts, are unreasonable, but these exhibits, while helpful, are themselves lengthy and serve to highlight the difficulty in strictly applying a lodestar approach.[1] (Docket # 149, Exs. A-H.) For example, the Commission argues that all of the work by the paralegal and project assistant is "clerical," and thus non-compensable. A table prepared by the Commission contains all of the time entries of that project assistant. (Docket # 149, Ex. E.) It is 19 pages long and contains

---

[1] The Commission allocated time within block-billed entries to create the exhibits. Plaintiffs do not dispute the accuracy of the contents of those exhibits cited in this order.

5

approximately 200 time entries, many of which are block billed. It is not possible to comb through this document and, with precision, identify and deduct unreasonable time. As to some of the other billing entries which the Commission disputes, the parties are not even in agreement that the entries remain in the amended fee petition. (Pls.' Reply Br. 6, Docket # 151.)

In light of this record, the court has determined a reasonable fee by evaluating, when feasible, the amount of time spent by plaintiffs' legal team on particular aspects of the case, rather than the time spent by any individual timekeeper, and extrapolating from that sample an overall measure of reasonable hours, always bearing in mind the lodestar principle of avoiding "duplicative, unproductive, or excessive hours." See Torres-Rivera, 524 F.3d at 340 (holding that when "time records . . . are ill-suited for evaluative purposes" a court "may adjust those entries to achieve an equitable result").

This case was decided at the summary judgment stage after a modest amount of discovery. The case was nonetheless staffed by 43 individuals including 16 attorneys. (Summary of Billed Amounts, Docket # 146 Ex. 1.) "A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992). While the amended fee petition seeks to recover for the work of nine timekeepers, including seven attorneys, and excludes the rest, those seven attorneys spent 721.96 hours of time in intrafirm (including Attorney Caruso) conferences. (Docket # 149, Ex. A.) That is more than 20% of their total hours in the fee petition. The delegation of tasks and attendant need for conferencing is a practical necessity of litigation, but this level of conferencing

6

is excessive. See Conservation Law Found., Inc. v. Patrick, No. 06-11295, 2011 WL 758844, at *8 (D. Mass. March 4, 2011) (reducing a fee award where counsel "spent an inordinate amount of time conferring among themselves regarding certain research topics"); Guckenberger v. Bos. Univ., 8 F. Supp.2d 91, 100-01 (D. Mass. 1998) (reducing a fee award after finding "near-constant bi-coastal efforts to coordinate case 'strategy' and 'status'" and conferences "on a daily basis"). After reviewing the time entries, I find a 45% reduction in intrafirm conferencing time is appropriate.

Counsel also spent an unreasonable amount of time on various phases of the litigation. Researching and writing the summary judgment motion, exclusive of any discovery, consumed 946.5 hours, 860 of which, or 21.5 full workweeks, are included in the amended fee petition. (Docket # 149, Ex. F.) If, for example, one attorney were to spend a full month preparing an initial draft, a second attorney were to spend a full month revising, and an additional month was spent preparing associated affidavits and exhibits, it would account for barely 60% of plaintiffs' claimed time. A 40% reduction is thus appropriate.

Counsel devoted 390 hours to preparation for the oral argument before the First Circuit, and plaintiffs seek to recover for 354.75 hours, or nearly nine full workweeks, of that time. (Docket # 149, Ex. G.) As the relevant legal arguments were already developed at great length in both summary judgment and appellate briefing, expending 354 hours preparing for a 15-minute oral argument exceeds what is reasonable by, conservatively, 60%.

Finally, plaintiffs seek compensation for 311.25 hours spent preparing the fee motion. (Docket # 149, Ex. H.) This, too, exceeds what is reasonable by at least 60%. The fee petition presents no novel issues of law. It was excessive to spend nearly eight full workweeks preparing the petition. The court also notes that almost all of the time was spent by attorneys, at high hourly rates, when much of this task, which "often amounts to little more than documenting what a lawyer did and why he or she did it," Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993) (internal quotation marks omitted), could have been accomplished by support staff. A prime example is the exhaustive 52-page summary spreadsheet which contains no legal analysis yet was prepared by an attorney. (Osgood Aff., Docket # 146.)

These categories of time spent on conferencing, preparing the summary judgment briefing, preparing for appellate argument, and drafting the fee petition account for 2,247.96 of the 4,058.5 claimed hours. Totaling the exclusions above, 1,179.48 hours of this sample, or 52%, is reasonable.

Evaluating the remaining portion of the 4058.5 hours is more difficult. For the reasons already discussed, it is impossible to parse individual billing entries. However, it is beyond doubt that the structural problem of overstaffing did result in more duplicative, unproductive, and excessive hours. While plaintiffs make much of the "substantial reduction" in hours built into the amended fee request, a great deal of that time was spent on activities, such as the motion to transfer, correspondence with the press, and meetings with industry groups, for which no fee could have been recovered (Osgood Aff. ¶ 10), and, as it removed the entirety of billing for 34 timekeepers, simply

8

reflects the endemic overstaffing of this case. Indeed, the Commission has identified some additional examples of unreasonable billing, including paralegal time spent doing clerical tasks, see Lipsett, 975 F.2d at 939-40 (distinguishing, under § 1988, "purely clerical tasks" from those properly entrusted to a paralegal), and overstaffing of court hearings, Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986) (holding that "time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted") (internal quotation marks omitted). At the same time, it is a reasonable assumption that the Commission will have highlighted the most egregious examples of excess hours in its briefing. Accordingly, I apply a 24% reduction in hours, half that of the larger sample, to the remaining portion of the billing records. The total compensable hours are, therefore, 2,555.49.

| Reasonable Hours | | | |
|---|---|---|---|
|  | Hours Requested | Reduction | Hours Allowed |
| Intrafirm Conferencing | 721.96 | 45% | 397.08 |
| Drafting of Summary Judgment Motion | 860 | 40% | 516 |
| Preparation for Oral Argument | 354.75 | 60% | 141.90 |
| Fee Petition | 311.25 | 60% | 124.5 |
|  |  | Total: | 1,179.48 |
| Other Hours | 1,810.54 | 24% | 1,376.01 |
|  |  | Total: | 2,555.49 |

**B. Hourly Rate**

The Commission objects to the requested hourly rates as unreasonable. Plaintiffs took a multi-step approach to calculating the rates. The calculation began with an attorney's 2010 hourly rate, regardless of the year in which the work was completed. (Osgood Aff. ¶¶ 5-7.) For associates, the calculation used the 2010 rate at the lockstop seniority level the associate occupied at the time of the billable work. For example, if an associate completed work in 2008, and was then classified as a "third year associate," the rate used in the fee application is the 2010 rate for a third year associate. All hours were further divided into core and non-core hours. Non-core work "includes letter writing, phone conversations, and clerical tasks" (Pls.' Mem. in Supp. 18 n.6), and compensation is requested at two-thirds the hourly rate. All paraprofessional work was billed as non-core. In an attached affidavit an attorney at a Boston law firm states that the requested rates "align" with those charged by comparable local attorneys. (Gleason Aff., Docket # 126.)

The hourly fee should be calculated according to "prevailing market rates in the relevant community" for "lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 & n.11 (1984). Attorney Caruso's blended hourly rate, weighted for core and non-core work over the entire billing period, is $276.77, and it provides the best evidence of the "prevailing market rate." He is a Boston-based attorney and a partner in his law firm. (Caruso Aff., Docket # 125.) He has more than 31 years of legal experience, including litigation in state and federal court, some of which involved constitutional matters, and he has argued more than 45 appeals before state and federal circuit courts. He represents and litigates on behalf of

out-of-Commonwealth alcohol beverage manufacturers and suppliers.  Put simply, he is a highly experienced litigator with specialized expertise in the area of wine law, and plaintiffs will have to provide good reason to justify as reasonable retaining higher-cost counsel.

The Commission makes one objection to Attorney Caruso's hourly rate which requires a brief discussion.  The $276.77 blended figure is calculated using his 2010 base rate of $325, a mid-2008 increase from the $300 rate that was in effect at the beginning of this litigation.  The use of this higher hourly rate for the work originally billed at $300 is appropriate compensation for the passage of time between the completion of the work and the award of fees.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 283-84 (1989).

Attorney Genesen, a partner with Kirkland & Ellis, is "the foremost attorney in this country on the intersection of the 21st Amendment, Commerce Clause and state and federal regulations of wine."  (Genesen Aff. ¶ 7, Docket # 145.)  She was the lead attorney drafting the Supreme Court briefs for the prevailing party in Granholm.  She has more than ten years of experience litigating on behalf of the wine industry and has taught wine law courses at both Harvard and Stanford law schools.  While her blended hourly rate of $559.58 far exceeds that of Attorney Caruso, it is, subject to one caveat, not unreasonable given her particular expertise in the area of wine law.  Attorney Genesen's hourly rate, unlike Attorney Caruso's, increased rapidly on a yearly basis from 2006 to 2010, by a total of nearly 30%.  The use of her 2010 rate for all billed hours thus creates a windfall for plaintiffs, as it far exceeds the rate at which the

majority of her work was invoiced to the client.  I reduce her blended rate by 10% so that she is compensated fairly, but not excessively, for the delay in payment.

Plaintiffs have failed to justify as reasonable rates exceeding that of Caruso for other counsel and staff.  None are held out to have specialized knowledge in the area of wine law.  Attorneys Genesen and Caruso, with a combined decades of experience litigating constitutional and wine law claims before the Supreme Court, federal courts of appeal and district courts, and state courts, possess all the specialized expertise necessary to successfully apply settled Commerce Clause jurisprudence and the holding in Granholm to the minimally disputed facts of this case.  Because the petition does not establish a need for the particular, high-priced expertise of Attorney Starr, his rate is reduced to that of Attorney Caruso.  The associates, who have from one to four years of legal experience, are assigned an hourly rate equal to two-thirds of Attorney Caruso's blended rate, which may well overstate their relative value.  The work of the paraprofessionals, for whom the blended rate is deceivingly low because all of their work is classified as non-core, is reduced by 50%, in rough proportion to the reduction in associate rates.

Helpfully, the summary attached to the fee motion includes an overall average rate, calculated by weighting each individual's blended hourly rate according to the percentage of total hours billed.  (Summary of Billed Amounts 50.)  I use that same relative weighting to calculate a new, overall blended rate.

| Reasonable Hourly Rate | | | |
| --- | --- | --- | --- |
| | Rate Requested | Rate Allowed | Weighting |

| Genesen | $559.58 | $503.62 | 18.21% |
|---|---|---|---|
| Caruso | $276.77 | $276.77 | 10.05% |
| Starr | $885.25 | $276.77 | 3.34% |
| Locke | $403.81 | $184.51 | 5.8% |
| Rodkin | $384.56 | $184.51 | 12.89% |
| Osgood | $335.47 | $184.51 | 34.93% |
| Christian | $352.79 | $184.51 | 3.14% |
| Farley | $187.60 | $93.80 | 3.02% |
| Weber | $108.23 | $54.12 | 8.62% |
| | Overall Blend: | $241 | |

**C.    Expenses**

Plaintiffs seek $77,893.45 for non-travel expenses, all of which was billed separately from attorney fees on the billing invoices. See Jenkins by Agyei, 491 U.S. at 286-87 (reasoning that if prevailing practice in the community is to bill the client for an expense, fees awarded at a market rate would not be fully compensatory without separate reimbursement for that expense).  After reviewing each bill in detail, plaintiffs are entitled to compensation, in full, for $32,615.47 in costs incurred by Kirkland & Ellis and $4,448.05 incurred by Attorney Caruso for filing and court fees, deposition related expenses, and computer research.  Six thousand eight hundred and thirty-two dollars and eight cents ($6,832.08) in overtime and meal costs are not recoverable as it was counsels' choice to work on this particular case during overtime hours.  The remainder, $33,997.85, consisting largely of postage, telephone, and document related costs, is reimbursed at 75% because of unnecessary use of messenger and overnight mailing

13

services and excessive copying and printing charges. Plaintiffs are awarded a total of $62,561.91 in non-travel expenses.

The Commission objects to the travel expenses in their entirety. It is not unreasonable for counsel to have incurred some travel expenses, as there was good cause to retain out-of-state counsel Genesen. However, it is plaintiffs' burden to establish reasonableness, and the expense records lack sufficient detail to make such a determination. The travel expenses are not itemized. The court cannot ascertain what was purchased. For two reasons, such detail is essential. First, an excessive number of attorneys attended the substantive hearings in this litigation. Specifically, three attorneys attended both the summary judgment and motion to dismiss hearings, and four attorneys attended the First Circuit oral argument. Without detail, it is impossible to deduct the expenses incurred by the excess attorneys. Second, when it was reasonable for an attorney to incur some travel expenses, it is impossible without detail to determine whether the expenses actually incurred were reasonable. This concern is not purely speculative. The Commission "understands" that attorneys stayed at a Boston hotel known for luxury and priced accordingly (Defs.' Opp'n 28 n.22), and the itemized list of expenses that were deleted in the amended fee petition includes hotel and airfare charges that, without some justification, would be excessive (Summary of Billed Amounts 45-49). Thus, the expense records are too generic to determine reasonableness, and no compensation for travel expenses is awarded. See Torres-Rivera, 524 F.3d at 336 (1st Cir. 2008).

**D.    The Total**

|  | Requested[2] | Allowed |
|---|---|---|
| Hours | 4,058.5 | 2,555.49 |
| Blended Hourly Rate | $375.51 | $241 |
| Total Fees | $1,524,016.7 | $615,873.09 |
| Total Expenses | $96,339 | $62,561.91 |

### III. Conclusion

Plaintiffs' motion for attorneys fees (Docket # 142) is ALLOWED as to $615,873.09 in fees and $62,561.91 in expenses. The Commission's motion for extension of time to file a reply (Docket # 148) is ALLOWED. Plaintiffs' motion for leave to file a reply (Docket # 151) is ALLOWED.

| June 8, 2011 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |

---

[2]The first three numbers below are taken from page 50 of the Summary of Billed Amounts. The third number differs from the exact product of the first two by approximately $10, perhaps due to rounding errors.